## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

RICARDO M.,

                   Claimant,

      v.

KILOLO KIJAKAZI, Acting
Commissioner of Social Security,

                   Respondent.

No. 19 CV 6802

Magistrate Judge Jeffrey T. Gilbert

## MEMORANDUM OPINION AND ORDER

Claimant Ricardo M.[1] ("Claimant") seeks review of the final decision of Respondent Kilolo Kijakazi,[2] Acting Commissioner of Social Security ("Commissioner"), denying Claimant's application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act"). Pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1, the parties have consented to the jurisdiction of a United States Magistrate Judge for all proceedings, including entry of final judgment. [ECF No. 7]. This Court has jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c), and the parties have filed cross-motions for summary judgment [ECF Nos. 13, 19] pursuant to Federal Rule of Civil Procedure 56. For the reasons discussed below, Claimant's

---

[1] Pursuant to Northern District of Illinois Local Rule 8.1 and Internal Operating Procedure 22, the Court will identify the non-government party by using his or her full first name and the first initial of the last name.

[2] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, the Court has substituted Acting Commissioner Kijakazi as the named defendant.

Motion to Reverse the Decision of the Commissioner of Social Security [ECF No. 13], or Motion for Summary Judgment, is denied and the Commissioner's Motion for Summary Judgement [ECF No. 19] is granted.

## PROCEDURAL HISTORY

On May 10, 2016, Claimant filed a Title II application for DIB alleging disability beginning on October 31, 2015. (R. 181–87). His claim was denied initially and upon reconsideration, after which he requested a hearing before an Administrative Law Judge ("ALJ"). (R. 75–87, 89–103, 118–32). On July 16, 2018, Claimant appeared and testified at a hearing before ALJ Deborah E. Ellis. (R. 34–61). ALJ Ellis also heard testimony on that date from Claimant's friend, Kimberly Ann Grimes, and impartial vocational expert ("VE") Pamela Jean Tucker. (R. 61–74). On October 12, 2018, ALJ Ellis denied Claimant's claim for DIB. (R. 12–33).

In finding Claimant not disabled, the ALJ followed the five-step evaluation process required by Social Security regulations for individuals over the age of 18. See 20 C.F.R. §§ 404.1520(a), 416.920(a). At step one, the ALJ found that Claimant had not engaged in substantial gainful activity since October 31, 2015. (R. 17). At step two, the ALJ found that Claimant had a severe impairment or combination of impairments as defined by 20 C.F.R. 404.1520(c). (R. 18). Specifically, Claimant has affective disorders, anxiety disorders, personality disorders, neurocognitive disorders, attention-deficit hyperactivity disorder (ADHD), and alcohol addiction disorder. (R. 18). The ALJ also acknowledged several non-severe impairments, including degenerative disc disease, hypertension, and obesity. (R. 18).

2

At step three, the ALJ determined that Claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 18–19). In particular, the ALJ considered listings 12.02, 12.04, 12.06, and 12.08 and evaluated whether the "paragraph B" or "paragraph C" criteria had been satisfied. (R. 18–19). In finding the "paragraph B" criteria had not been met, the ALJ noted Claimant had limitations in certain broad areas of functioning, starting with a mild limitation in understanding, remembering, or applying information. (R. 19). In interacting with others, as well as in concentration, persistence, or pace, Claimant had a moderate limitation. (R. 19). Finally, in adapting or managing oneself, the ALJ assessed a mild limitation. (R. 19). As to the "paragraph C" criteria, the ALJ concluded the medical evidence of record did not show that simple changes or increased demands have led to a deterioration of Claimant's functioning outside of the home, and so the criteria were not satisfied. (R. 20).

The ALJ then found Claimant had the residual functional capacity ("RFC") to:

> "perform a full range of work at all exertional levels but with the following nonexertional limitations: The claimant is capable of performing simple and routine work with occasional interaction with supervisors, coworkers, and the public. He cannot work at an assembly line pace. The claimant will be off-task no more than 15% of the workday and absent no more than once per month." (R. 20).

Based on this RFC, the ALJ found at step four that Claimant had past relevant work as an automotive painter. (R. 26). The mental and physical demands of this work, however, exceeded Claimant's residual functional capacity and so the ALJ concluded that Claimant was unable to perform his past relevant work as actually or

generally performed. (R. 26). At step five, the ALJ concluded that, considering Claimant's age, education, past work experience, and residual functional capacity, he is capable of performing other work within the national economy and that those jobs exist in significant numbers. (R. 26–27). Specifically, the VE's testimony, on which the ALJ relied, identified jobs at the medium exertional levels, including laundry worker, machine feeder, and transportation cleaner. (R. 27). The ALJ then found Claimant was not under a disability from October 31, 2015 through October 12, 2018, the date of her decision. (R. 28). The Appeals Council declined to review the matter on August 19, 2019, (R. 1–6), making the ALJ's decision the final decision of the Commissioner and, therefore, reviewable by this Court. 42 U.S.C. § 405(g); *see, e.g., Smith v. Berryhill*, 139 S. Ct. 1765, 1775 (2019); *Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005).

## STANDARD OF REVIEW

When a claimant files an application for disability benefits, he or she bears the burden under the Social Security Act of bringing forth evidence that proves his or her impairments are so severe that they prevent the performance of any substantial gainful activity. 42 U.S.C. § 423(d)(5)(A); *see Bowen v. Yuckert*, 482 U.S. 137, 147–48 (1987) (citing 42 U.S.C. § 423(d)(1)(A)). A five-step inquiry controls whether an individual is eligible for disability benefits under the Social Security Act, which the Seventh Circuit has summarized as follows:

> The ALJ must consider whether: (1) the claimant is presently employed; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any impairment listed in the regulations as being so severe as to preclude substantial gainful activity; (4) the claimant's residual functional capacity leaves him unable to perform his

> past relevant work; and (5) the claimant is unable to perform any other work existing in significant numbers in the national economy."

*Butler v. Kijakazi,* 4 F.4th 498, 501 (7th Cir. 2021) (citing *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351–52 (7th Cir. 2005); 20 C.F.R. §§ 404.1520, 416.920). Claimant bears the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five. *Gedatus v. Saul,* 994 F.3d 893, 898 (7th Cir. 2021); *Wilder v. Kijakazi,* 22 F.4th 644 (7th Cir. 2022).

A decision by an ALJ becomes the Commissioner's final decision if the Appeals Council denies a request for review. *Sims v. Apfel*, 530 U.S. 103, 106–07 (2000). The reviewing court may enter a judgment "affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Judicial review is limited to determining whether the ALJ's decision is supported by substantial evidence in the record and whether the ALJ applied the correct legal standards in reaching his or her decision. *See Nelms v. Astrue*, 553 F.3d 1093, 1097 (7th Cir. 2009). Substantial evidence "means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal quotations omitted); *see also,* 42 U.S.C. § 405(g); *Fowlkes v. Kijakazi*, 2021 WL 5191346, at *2 (7th Cir. 2021). "[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek*, 139 S. Ct. at 1154.

However, even where there is adequate evidence in the record to support the decision, the findings will not be upheld if the ALJ does not build a "logical bridge"

from the evidence to the conclusion. *Wilder,* 22 F.4th 644 (citing *Butler,* 4 F.4th at 501); *see also, Jarnutowski v. Kijakazi*, 2022 WL 4126293, at *4–5 (7th Cir. 2022). In other words, if the Commissioner's decision lacks evidentiary support or adequate discussion of the issues, it cannot stand. *See Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009). Though the standard of review is deferential, a reviewing court must "conduct a critical review of the evidence" before affirming the Commissioner's decision. *Eichstadt v. Astrue*, 534 F.3d 663, 665 (7th Cir. 2008) (internal quotations omitted). The reviewing court may not, however, "displace the ALJ's judgment by reconsidering facts or evidence, or by making independent credibility determinations." *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008); *see also, Gribben v. Kijakazi,* 2022 WL 59404, at *2 (7th Cir. 2022) ("We do not reweigh the evidence or resolve conflicts in it."). "[O]nly if the record compels a contrary result" will the court reverse the ALJ's decision. *Fowlkes*, 2021 WL 5191346, at *2 (quoting *Borovsky v. Holder*, 612 F.3d 917, 921 (7th Cir. 2010)).

## ANALYSIS

### I.  Claimant's RFC

The RFC is the "assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996); *Madrell v. Kijakazi,* 25 F.4th 514, 516 (7th Cir. 2022); *Jeske v. Saul,* 955 F.3d 583, 593 (7th Cir. 2020). "In making a proper RFC determination, the ALJ must consider all of the relevant evidence in the record, even limitations that are not severe, and may not

6

dismiss a line of evidence contrary to the ruling." *Murphy v. Colvin,* 759 F.3d 811, 817 (7th Cir. 2014), as amended (Aug. 20, 2014) (quotation omitted); *see also Crump v. Saul*, 932 F.3d 567, 570 (7th Cir. 2019); *Varga v. Colvin,* 794 F.3d 809, 813 (7th Cir. 2015); SSR 96-8p; 20 C.F.R. § 416.945(a). This also extends to the hypotheticals posed to the vocational expert. *Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir. 2015). Here, the ALJ determined that Claimant had the mental RFC to perform simple and routine work with occasional interaction with supervisors, coworkers, and the public, but could not perform no work at an assembly line pace. The ALJ also noted in Claimant's mental RFC that the Claimant would be off-task no more than 15% of the workday and absent no more than once per month.

This RFC, according to Claimant, is flawed in three ways. First, Claimant asserts that the ALJ erred by failing to explain the basis for her conclusion that Claimant would not be off-task more than 15% of the workday. Next, Claimant asserts that the ALJ ignored the state agency consultant's recommendation that Claimant be limited to work involving one-to-two steps in a low-pressure setting. Finally, Claimant broadly argues that the ALJ failed to accommodate his functional limitations, including a moderate restriction in concentration, persistence, or pace, in the RFC. For the reasons discussed below, the Court finds the ALJ either did not err, or if she did, then any error was harmless.

### i. Off-Task Time

After reviewing Claimant's medical records, opinion sources, and subjective statements, (R. 20–26), the ALJ concluded Claimant would be off-task for no more than 15% of the workday. (R. 20). In contesting this conclusion, Claimant does not

argue that he, in fact, would be off task for more than 15% of the workday or that the medical evidence supports such a limitation. He argues only that the ALJ erred in failing to explain why she concluded as much, notwithstanding that he does not substantively dispute the conclusion itself. This is not a basis for remand.

Although the failure of an ALJ to explain his or her off-task time determination may, in some circumstances, be characterized a breakdown of the oft-maligned logical bridge, *Lanigan v. Berryhill*, 865 F.3d 558, 563 (7th Cir. 2017), no such failing occurred in this case. There is no medical opinion in the record supporting an off-task time limitation greater than 15%. *Gedatus v. Saul*, 994 F.3d 893, 904 (7th Cir. 2021) ("A fundamental problem is [that claimant] offered no opinion from any doctor to set sitting limits, or any other limits, greater than those the ALJ set."); *Spring W. v. Saul*, 2021 WL 2529615, at *6 n.5 (N.D. Ill. 2021) (where "no doctor opined that [claimant] would require an off-task time limitation ... [claimant's] argument that the ALJ should have included an off-task time limitation, lacks merit."). Claimant's own treating physician Dr. George E. Miguel – whose opinion the ALJ discounted consistent with 20 C.F.R. § 404.1527(d) – concluded that Claimant's symptoms would interfere with his attention and concentration no more than 5% of the workday. (R. 24, 687). Nor does Claimant point to any other evidence in the record suggesting he would be off task a greater percentage of time. It is Claimant's burden to show his mental limitations would cause such a restriction, and he has not carried that burden here. *Gedatus*, 994 F.3d at 905; *Weaver v. Berryhill*, 746 F. App'x 574, 578–79 (7th Cir. 2018).

The ALJ's fulsome evaluation of the medical record, opinion evidence from Claimant's two treating physicians and the state agency consultants, Claimant's subjective statements, and a third-party function report is enough to substantiate her conclusion that Claimant would not be off-task more than 15% of the workday, even in the absence of a targeted explanation for that particular off-task percentage. The record amply supports the ALJ's off-task determination and Claimant points to no evidence to the contrary.

### ii. The One- To Two-Step Task Limitation

Claimant next argues that the ALJ erred by not specifically incorporating the one- to two-step task limitation both state agency consultants recommended into the RFC, despite affording great weight to those consultants' opinions. The consultants noted that Claimant had several mental limitations, including in the areas of memory, concentration, persistence, and social interaction, and ultimately opined that the "overall weight of the data indicates that [Claimant] is mentally capable of performing simple 1-2 step tasks in a low pressure work setting that has minimal demands for interaction with others." (R. 85, 100–01). The ALJ did not track the consultants' language in her own RFC. Instead, she sought to accommodate Claimant's struggles with concentration, persistence, and social interaction with a restriction to "simple and routine work with occasional interaction with supervisors, coworkers, and the public." (R. 20).

The "RFC is a legal—and not a medical—decision that is exclusively within the ALJ's authority to make," and "[a]s such, the critical question is not whether the ALJ's RFC conclusions match a medical expert's opinion item-by-item but whether

9

substantial evidence supports what the ALJ ultimately concluded about the claimant's RFC." *Michael B. v. Berryhill,* 2019 WL 2269962, at *6 (N.D. Ill. 2019). The Court recognizes "there is a significant difference between one- to two-step tasks and simple, routine, repetitive tasks." *Schlattman v. Colvin*, 2014 WL 185009, at *7 (N.D. Ill. 2014). "[A] limitation to one or two step work restricts the person to a Level 1 Reasoning job under the DOT, whereas simple work may also include Reasoning Level 2 or higher." *Deborah B. v. Kijakazi,* 2022 WL 1292249, at *2 (N.D. Ill. 2022). Given that "significant difference," and the fact that the state agency consultants posited the only medical opinions to which the ALJ afforded any weight, the ALJ erred by failing to explain why she did not adopt the agency consultants' one- to two-step task limitation. She should have explained why she adopted some of the state agency consultants' findings but not the one- to two-step task limitation, particularly because that limitation is "more restrictive than just the limitation to simple work[.]" *Deborah B.,* 2022 WL 1292249, at *2; *see also, Diaz v. Berryhill*, 2017 WL 4163959, at *2 (N.D. Ill. 2017) ("The ALJ was not required to accept the Agency doctors' opinions, but he was required to – and did not – explain why he adopted some of their findings and rejected others."); *Ghada G. v. Kijakazi,* 2022 WL 580782, at *7 (N.D. Ill. 2022) ("[I]t is generally alright when an ALJ draws her hypothetical/residual functional capacity finding directly from the opinions of the state agency reviewing doctors. But the ALJ didn't do that here. She rejected the limitation to 'simple 1-2 step tasks' and didn't explain why.").

       That error, however, was harmless. One of the three jobs identified by the VE has a Reasoning Level of 1 (transportation cleaner) and therefore can be performed

by an individual with a one- to two-step limitation. (DOT 919.687-014); *Schlattman*, 2014 WL 185009, at *7 ("One- to two-step tasks function as a term of art in the Social Security context: Thus the Department of Labor's Dictionary of Occupational Titles ("DOT") defines a Reasoning Development Level of 1 as the ability to "[a]pply commonsense understanding to carry out simple one- or two-step instructions" (1991 WL 688702)."). The VE testified that the occupation as transportation cleaner had 28,000 jobs in the national economy, and the ALJ specifically incorporated that finding into her opinion. (R. 27). One job, existing in in "significant numbers" in the national economy,[3] is enough. *See* 20 C.F.R. § 404.1566 ("Work exists in the national economy when there is a significant number of jobs (in *one or more occupations*) having requirements which you are able to meet with your physical or mental abilities and vocational qualifications") (emphasis added); *Collins v. Berryhill,* 743 F. App'x 21, 25–26 (7th Cir. 2018) (55,000 jobs was a significant number of jobs nationally); *Mitchell v. Kijakazi,* 2021 WL 3086194, at *3 (7th Cir. 2021) (30,000 jobs was a significant number nationally); *Iversen v. Berryhill*, 2017 WL 1848478, at *5

---

[3] Although the Seventh Circuit commented in *Mitchell* and *Collins* that 30,000 jobs and 55,000 jobs in the national economy was significant, there remains no controlling precedent in this Circuit as to the precise threshold for a "significant number" of jobs in the national economy. "[D]istrict courts within the circuit—applying national numbers—have found as many as 120,350 jobs to not meet the burden, and as few as 17,700 jobs to be significant." *Angela L.,* 2021 WL 2843207, at *5 (citing *John C.,* 2021 WL 794780, at *5). The Third, Sixth, and Eighth Circuits have all found that fewer than 28,000 jobs is a significant number of jobs in the national economy. *Sanchez v. Comm'r of Soc. Sec.,* 705 F. App'x 95, 99 (3d Cir. 2017) (finding 18,000 jobs in the national economy significant); *Taskila v. Comm'r of Soc. Sec.,* 819 F.3d 902, 905 (6th Cir. 2016) (finding 6,000 jobs in the national economy significant); *Gutierrez v. Comm'r of Soc. Sec.,* 740 F.3d 519, 528-29 (9th Cir. 2014) (finding 25,000 jobs in the national economy significant); *Johnson v. Chater,* 108 F.3d 178, 180 (8th Cir. 1997) (finding 10,000 jobs in the national economy significant). The Court is persuaded by the bulk of circuit precedent on this issue and finds 28,000 jobs in the national economy significant.

(N.D. Ill. 2017) (30,000 jobs in the national economy was significant); *Joseph M. v. Saul*, 2019 WL 6918281, at *17 (N.D. Ill. 2019) ("positions account[ing] for 40,000 jobs nationally" qualified as a significant number); *Dorothy B. v. Berryhill*, 2019 WL 2325998, at *6–7 (N.D. Ill. 2019) (17,700 jobs is a significant number of jobs in the national economy). The ALJ's error, therefore, in failing to discuss why she rejected the consultants' one- to two-step task limitation is harmless. She met her burden at step five regardless.

### iii. Claimant's Functional Limitations

Finally, Claimant argues in broad strokes that the ALJ failed to accommodate all his functional limitations in the RFC. But "[i]t is not this court's responsibility to research and construct the parties' arguments," and Claimant has done little more here than identify issues and state conclusions.[4] *Draper v. Martin*, 664 F.3d 1110, 1114 (7th Cir. 2011); *see also, Schaefer v. Universal Scaffolding & Equip., LLC*, 839 F.3d 599, 607 (7th Cir. 2016) ("Perfunctory and undeveloped arguments are waived, as are arguments unsupported by legal authority."). Nor is the Court substantively persuaded by Claimant's undeveloped arguments regarding his functional limitations and the RFC. The ALJ provided the VE with a complete picture of

---

[4] *See, e.g,* [ECF No. 13] at 10 ("The ALJ found that [Claimant] retained the ability to occasionally interact with coworkers. (AR 20). The ALJ failed to explain how this limitation addressed the state agency psychological consultants' opinion that [Claimant] suffered a moderate restriction in the ability to work in coordination with or proximity to others without being distracted by them. By finding that [Claimant] could tolerate occasional interaction with coworkers, the ALJ found that [Claimant] could interact with coworkers for up to one-third of the workday. SSR 83-10. The ALJ failed to explain how, if [Claimant] was moderately limited in the ability to work in coordination with or proximity to coworkers without being unduly distracted by them, [Claimant] could interact with coworkers for up to one-third of the workday.").

Claimant's limitations before formulating the RFC, *Jelinek v. Astrue*, 662 F.3d 805, 813 (7th Cir. 2011), including his deficiencies of concentration, persistence and pace. *DeCamp*, 916 F.3d at 675; *Moreno*, 882 F.3d at 730. The ALJ then built a logical bridge between her acknowledgment of Claimant's mental limitations and the restrictions contained in the RFC and supported that RFC with record evidence. That is enough. The Court sees no reversible error in how the ALJ accommodated Claimant's functional limitations in the RFC.

## II.    The ALJ's Subjective Symptom Assessment

An ALJ's evaluation of a claimant's subjective symptom statements is afforded "special deference" and will be upheld unless it is "patently wrong." *Summers v. Berryhill*, 864 F.3d 523, 528 (7th Cir. 2017); *see also, Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019); *Murphy*, 759 F.3d at 816 (patently wrong "means that the decision lacks any explanation or support."). SR 16-3p[5] outlines a two-step process for an ALJ to follow when evaluating a claimant's subjective symptoms. First, the ALJ must determine whether the claimant has a medically determinable impairment that could reasonably be expected to produce his or her symptoms. SSR 16-3p, 2017 WL 4790249, *49463; *Wilder*, 22 F.4th at 654. Next, the ALJ must evaluate the "intensity,

---

[5] Because the ALJ issued her ruling after March 28, 2016, SSR 16-3p, which superseded SSR 96-7p, applies here. But SSR 96-7p and SSR 16-3p "are not patently inconsistent with one another" – instead, a "comparison of the two Rulings shows substantial consistency, both in the two-step process to be followed and in the factors to be considered in determining the intensity and persistence of a party's symptoms." *McCammond v. Colvin*, 2016 WL 3595736 at *3 (N.D. Ill. 2016). SSR 16-3p simply reaffirmed the focus on the regulatory language regarding symptom evaluation and clarified that the "subjective symptom evaluation is not an examination of the individual's character." SSR 16-3p; *see also Cole v. Colvin*, 831 F.3d 411, 412 (7th Cir. 2016). The case law discussing both SSR 16-3p and SSR 96-7p therefore is informative on this point.

persistence, and functionally limiting effects of the individual's symptoms to determine the extent to which the symptoms affect the individual's ability to do basic work activities." SSR 16-3p, 2017 WL 4790249, *49464; *Wilder*, 22 F.4th at 654. "The ALJ must justify his or her subjective symptom evaluation with "specific reasons supported by the record," *Pepper v. Colvin*, 712 F.3d 351, 367 (7th Cir. 2013), and in doing so, must consider several factors, including the objective medical evidence, the claimant's daily activities, his level of pain or symptoms, aggravating factors, medication, course of treatment, and functional limitations. 20 C.F.R. § 404.1529(c); SSR 16-3p, 2017 WL 5180304, at *5, *7–8 (Oct. 25, 2017).

Claimant faults the ALJ for discounting his subjective complaints as "not entirely consistent" with the objective medical evidence and Claimant's activities of daily living. Although the Seventh Circuit has sometimes characterized the "not entirely consistent" language as meaningless boilerplate, *Jarnutowski*, 2022 WL 4126293, at *5, the phrase "not entirely credible," or "not entirely consistent" in this case, is meaningless only when the ALJ gives no legitimate reasons for discrediting the claimant's testimony. *Martinez v. Astrue*, 630 F.3d 693, 696 (7th Cir. 2011). "The use of boilerplate is innocuous when, as here, the language is followed by an explanation for rejecting the claimant's testimony." *Schomas v. Colvin,* 732 F.3d 702, 708 (7th Cir. 2013).

Here, the ALJ followed the SSR 16-3p factors and adequately explained her conclusion that the objective medical evidence, Claimant's daily activities, level of pain or symptoms, and functional limitations did not corroborate his subjective symptoms. An ALJ may view discrepancies with the medical record as probative of

exaggeration, *Getch v. Astrue*, 539 F.3d 473, 483 (7th Cir. 2008), and the ALJ properly did so in this case. As the ALJ described, the medical evidence was at odds with the severity of limitations Claimant described in his disability application and to which he testified at the hearing. Claimant complained of disabling anxiety and panic, as well as severe stress caused by interacting with others and meeting expectations, especially in the workplace. (R. 40–61). But the notes and records of his treating physicians – in particular, mental status examinations that showed Claimant was alert, oriented, demonstrated normal mood, affect, speech, memory, and judgment – were at odds with his testimony. (R. 22, 375–76, 642–43).

The state agency consultants' opinions similarly were at odds with Claimant's testimony, which the ALJ correctly considered. (R. 25). And Claimant's mental health treatment provider from August 2016 through March 2018, Dr. Miguel, documented few objective observations of Claimant's state of mind in his "sparse and very difficult to read" records, but at the very least, Claimant did not appear to exhibit abnormal objective mental status during those examinations. (R. 22, 675–84). On the whole, Claimant's care providers described Claimant as pleasant, cooperative, and with normal memory, normal attention span and concentration, normal insight, and appropriate mood and affect during the relevant period. (R. 19–26, 374–81, 531–34, 642–48, 768–70).

The ALJ acknowledged Claimant's anxiety, affective disorders, and difficulty with social interaction, but pointed to the evaluations from his various treating physicians that showed mostly normal mental status evaluations and the ability to interact with others subject to certain limitations, namely those incorporated into the

15

RFC. The ALJ was entitled to consider that the above findings contrasted with Claimant's subjective description of his symptoms, for as the Seventh Circuit has emphasized, "[t]here is no presumption of truthfulness for a claimant's subjective complaints; rather, an ALJ should rely on medical opinions based on objective observations and not solely on a claimant's subjective assertions." *Knox v. Astrue*, 327 F. App'x 652, 655 (7th Cir. 2009) (citing *Rice v. Barnhart*, 384 F.3d 363, 371 (7th Cir. 2004)). Likewise, the ALJ permissibly considered the course of Claimant's treatment, 20 C.F.R. § 404.1529(c)(3)(v), and the longitudinal record evidence showing Claimant managed his mild to moderate symptoms with conservative treatment and medication management.

The ALJ also permissibly relied on evidence that Claimant's activities of daily living suggested he was not as disabled during the relevant time period as he portrayed himself to be. There are "limits on an ALJ's use of a claimant's daily activities to undermine assertions of disabling symptoms," *Prill*, 23 F.4th at 748, and the Seventh Circuit has "cautioned ALJs not to equate such activities with the rigorous demands of the workplace." *Alvarado v. Colvin*, 836 F.3d 744, 750 (7th Cir. 2016) (citations omitted). "But it is entirely permissible to examine all of the evidence, including a claimant's daily activities, to assess whether 'testimony about the effects of his impairments was credible or exaggerated.'" *Id.* (quoting *Loveless v. Colvin,* 810 F.3d 502, 508 (7th Cir. 2016)). The ALJ did so here when she noted the difference between Claimant's assertions of disabling pain and the activities he performed daily.

Claimant testified that he prepares simple meals daily, sometimes cooks breakfast or lunch, performs light household chores such as cleaning, and handles his

16

own personal care. (R. 23, 49–61). He socializes with his son weekly by phone or on Skype, attends AA meetings regularly, and goes out to breakfast and lunch with his friend, Ms. Grimes, with whom he lives and whose third-party function report and testimony the ALJ considered. (R. 23, 62–70). He used to fish but no longer can do so, as his hunting, fishing, and driver's licenses were suspended by the State of Illinois due to unpaid child support. (R. 52–53). Since leaving his "passion" for automotive repair, Claimant articulated that he has not sought another job due to, among other things, the anxiety of meeting workplace expectations, and so he primarily stays at home watching television or doing spiritual reading. (R. 23, 50–51, 56, 244–47). He tries to go for a walk every day, sometimes mows the lawn, rides his bike, or fixes things around the house. (R. 23, 51–61). He goes to the grocery store with his friend Kim, although he stays in the car because of the anxiety caused by the social interaction in the store. (R. 51–52). The ALJ was entitled, as one factor in her decision to discount Claimant's subjective testimony, to consider that Claimant's reported symptoms were incompatible with the above-described activities.

Finally, the ALJ noted that internal inconsistencies in Claimant's subjective symptom statements gave her pause as to the reliability of the information he provided in support of his disability claim. (R. 26) ("The claimant's allegations are weakened by inconsistencies between his allegations, his statements regarding daily activities, and the medical evidence. Although the inconsistent information provided by the claimant may not be the result of a conscious intention to mislead, nevertheless the inconsistencies suggest that the information provided by the claimant generally may not be reliable. The claimant does experience some limitations but only to the

17

extent described in the residual functional capacity above."). This too was within the purview of SSR 16-3p and properly considered by the ALJ. *Diantha S. v. Saul*, 2021 WL 2072137, at *7 (N.D. Ill. 2021) ("The ALJ and the Appeals Council considered Claimant's pain and evaluated the relevant evidence of record, including the objective medical evidence, Claimant's course of treatment, Claimant's activities of daily living, and the internal inconsistencies in Claimant's own testimony.").

In sum, the ALJ did not err in weighing Claimant's self-reported daily activities, the objective medical record, Claimant's course of treatment, and internal inconsistencies in Claimant's testimony, and then concluding that these factors belied the severity and limitations of his claimed symptoms. The ALJ need only explain her subjective symptom evaluation "in such a way that allows [the Court] to determine whether she reached her decision in a rational manner, logically based on her specific findings and the evidence in the record." *Murphy*, 759 F.3d at 816 (internal quotations omitted). She did so here.

## CONCLUSION

Accordingly, for all these reasons, Claimant's Motion for Summary Judgment [ECF No. 13] is denied and the Commissioner's Motion for Summary Judgement [ECF No. 19] is granted.

It is so ordered.

Jeffrey T. Gilbert
United States Magistrate Judge

Dated:    September 20, 2022